This is our third case in the morning. 4-13-0254. People from the state of Illinois v. Floyd Brown. Attorney McCarthy is here on behalf of the appellant. Attorney Miller is here on behalf of the appellee. Mr. McCarthy, are you ready to start? Yes. Alright, you may proceed. Your honors, counsel, may it please the court. My name is John McCarthy and I'm from the Office of the State of Fault Defender. This is an appeal from the denial of the motion to suppress the illegal entry into the residence of my client. Now this case is going to come down to the decision made by Officer Wesselman as he and his team of Springfield and Decatur detectives decide to enter my client's house. When we get to that point in the argument, I'm going to explain why what they did was incorrect and unconstitutional. I'm going to give the constitutional alternative based on the factors that the trial court used that should have been pursued. However, before we get to the floor, we have to look at the totality of the circumstances. So we need to take a look at the facts leading up to what occurred. In February of 2011, there had been a series of 21 burglaries in Decatur from maybe November of 2010 to 2011. On February 9th, 2011, the Decatur police got a call from a citizen saying, he's a suspicious guy going back to these houses, and he's driving a black Charger. So Decatur police send a cop car out there, and he basically stakes out the black Charger. A man comes out from behind the buildings, goes to the black Charger, and gets him. Now the Decatur police officer, who is in an unmarked black Tahoe, attempts to execute a stop. The guy invades him, gets on I-72, and goes toward Springfield. Well, the Decatur police officer had called in the license plate number of the black Charger. It came back as registered Betty Simpson. When this information was relayed to the Springfield Police Department, they said, well that's Floyd Brown's mom. We know Floyd, he's a frequent flyer, he's a felon, he's violent, and we know where to find him. So Officer Russellman sends him to the back of my client's residence. And when Officer Paglioli gets there, he finds a light-skinned African American male standing at the trunk of the black Ford Charger. And he approaches him. The male sees him, slams the trunk shut, runs into the house, is in the house no more than 30 seconds, bolts out, runs around to the front of the house, gets in the trunk, and takes off. During this time, the Springfield Police Department arrives, not the whole department, but members of the department arrive. The Decatur police have a couple of representatives there. And they notice that the back door of the house is ajar. So they approach the house. It's a very cold night. They look into the house. They see that there's a vicious pickle, who, by the way, isn't trying to attack anybody, but is standing in the hallway. The police can see a gun and a black mask on the floor, and they see some items on the counter. And they're deciding what to do. So this is from outside? This is from the outside, yes. And they hear some voices. There's a split in the testimony, whether it was obviously a police scanner or whether it could have been some people talking. I think, based on the facts of this case, it obviously was a police scanner, because when Officer Wesselman was talking to his officers, he used a cell phone, because my client was known to monitor police scanners. But that's neither here nor there. The trial court found there's a possibility that they heard voices, and we have to go with the trial court's findings. Well, anyways, while we're standing outside... Let me ask you a question. Sure. At this juncture, based upon the facts as you just related them to this court, didn't the police have probable cause to obtain a search warrant for your client's residence? No. And the police didn't think they did. They testified at the expression hearing. They didn't think they had enough to get a search warrant at that point. They knew they had enough to get a search warrant for the Dodge Charger. I mean, when they hadn't gotten one for that. But they made the decision that, based on the fact that my client's a violent felon, he'd gone in and out of the house in a relatively quick manner, that they needed to do a protective sweep. And I understand that, but you're saying he's a violent felon, he appears to be the person who just fled from a burglary outside of the county, came into this county, has gone into the house, there's an open door, they see a gun inside and a vicious pit bull, which wasn't attacked by anybody, so I don't know how they knew it was vicious. But based upon that, the police officer testified that at that juncture, they didn't have probable cause to get a search warrant to search that house. That was their testimony? Yes. Wow. And at that juncture, nobody had positively identified my client as being the person who ran into the house and ran out. And maybe that's perhaps why they didn't feel like they had a probable cause. I don't think a probable cause for a search warrant at that point would have necessitated a positive identification of your client, but that's what the police officers testified, that's the record. So, excuse me for interrupting. No, I'm glad to try to answer any questions that you have. Now, here's where, and the trial court denied the motion to suppress. And the factors they looked at, it was very cold outside, the door was left ajar, there was an aggressive pit bull, voices were heard, Brown was known to be the convicted felon, a handgun on the kitchen floor, male subjects seen walking at the back of the house, same male subjects seen running from home, unknown if others were in the home. And based on that information, they said, the trial court found that residual circumstances existed which allowed police to check on the welfare of others whose physical safety may have been in imminent peril. Now, let's look at what the police actually did, and then I'll tell you what the police should have done. The police actually did, they rushed into this house, they pepper spray a dog, they take the dog into the bedroom, they run in, and do the protective sweep, I'm assuming guns ablazing, to make sure that, you know, in the case of the violent person inside, that they're not, you know, getting shot at, and they do the protective sweep, and lo and behold, they see evidence of burglary, what they think is evidence of a burglary. And so they come back out, then they send them to the Decatur Police Department, they don't know that any of these items have been stolen, they start taking pictures with their cell phone, they send it to the officer in Decatur who matches it up with stolen items, and then they go and get a search warrant. What the Springfield Police Department did was reckless, it was unconstitutional, and beyond what should have been done. Here's what should have been done. Well, before you go there, the photos were taken while they were in the house on the community caretaking, is that correct? Correct. What happened is they went in with the community caretaking, they entered the house, and they said, hey, look, there's some stuff on the, and the Springfield Police were the only police department to go inside. Okay. They came out, they told the Decatur police officers, hey, there's some stuff on the counter you guys may want to look at, it could be part of the burglary. So the Decatur police officers then went in, they took the pictures, and they attached them to the sergeant who was in Macon County. But was this argued at the motion to suppress? Yeah. I don't think so. A deposition was taken later of one of the officers, right, and this issue was raised. The issue at the motion to suppress was the initial entry by the Springfield Police officers. Again, that's why I'm arguing the initial entry was uncalled for. Right. But the second entry with the taking of the pictures wasn't even argued at the motion to suppress. I was just explaining the fast forward of what happened. I'm not making any comment either way. I'm just explaining how they eventually got their warrant. What I'm getting at is if the trial judge in the hearing on the motion to suppress isn't presented with that evidence, doesn't hear it, they don't argue it, it's not relevant to our decision here, is it? Well, it was brought up in the supplemental hearing, and the new trial counsel, I believe it was, asked the trial court to consider the new evidence, and the trial court still ruled against them. So technically it was in front of the trial court. Well, unless the trial court said it wasn't going to consider it. I don't recall. I guess my point is the motion to suppress, the hearing on the motion to suppress, was based in total on the entry of the Springfield officers. Correct. Okay. And that's why I'm arguing it was unconstitutional. I was just giving the full picture of what happened. And you said initially that the Decatur officers were there at the time the Springfield police officers entered, but I don't think that's the case, is it? They were standing outside. Were they already there? Yeah. There was, I think one was Detective Hitchens, and the other one might have been a crew member. Well, they arrived, but I'm not sure that was during the time the Springfield police officers were inside. Well, I derived that from the comment of one of the officers during the testimony that says, I did not take part in the decision to enter the house. And from that, because you determined they were there at the scene? Well, because he said that when he was asked if he heard voices inside the house, he said, I heard a police scanner. And the only reason he could hear a police scanner is because he's standing there at the same time as the Springfield police department are. Not necessarily. The scanner could have been making noise when he arrived. But whatever. Okay. We'll check the record on it. Sure. Here's what the police should have done. Based on the factors, okay, very cold, door left ajar, aggressive pit bull, problem solved, closed the door. You hear voices. You think there might be a second person involved, either inside the house because you're not sure. Can you hear voices? You don't hear anybody screaming out in pain. And nobody's asking for help. Nobody is indicating they're in any distress at all. Here's the simple solution to the problem getting inside the house. Springfield police. Is anybody in distress? But the Springfield police department did not want to do that because here's the problem. What if there is a second person in the house? He comes to the door. And the police say, hey, he opens the door, he's ajar, and we're a little concerned. He says, hey, everything's fine. He ran in, he ran out, left the door open. We argue about this thing all the time. And our car bills are high. But, no, everything's fine. Sir, do you mind if we can search your house? Yeah, I don't mind. This is my house. You're not coming in. They can't go in and take a look at the goods. The Springfield police department bypassed that option. But given what they've just observed, what if the individual who answers the knock is a co-defendant or a close ally of the defendant and he's got a weapon? You already know that this violent felon has entered this home possibly with permission. His actions are such that it looks like it's a place where he's going to unload his goods. I don't know how comfortable I would have been in knocking. Well, if you're concerned that there's somebody back in the bathroom with a gun, do you think it's safer to knock on the door or pepper spray a dog and then not announcing who you are? True. Pepper spraying a dog? That guy with a gun's going to come around with guns to blaze him. That's more dangerous than what I suggest that they do. You mean pepper spraying the dog? Pepper spraying the dog. The dog's going to be yelled at. It's going to be in pain. True. You might think your home's being invaded. So what the Springfield Police Department not only did was unconstitutional, it was reckless given the facts of this case. So based on those arguments, I believe that the entry was unconstitutional. It wasn't a community caretaking function because community caretaking does not involve the investigation of a crime. It's limited to the safety of the public. And the fact the door's ajar and somebody ran out of the house, there was, like I said, you could knock on the door. The other argument presented by the state is the inevitable discovery factor because the police had properly obtained a search warrant for the black charger, and they had plenty of probable cause to get that based on what happened in Decatur, evading the police and coming on over to Springfield. They didn't find anything immediately recognizable as being part of burglaries. They found a garden GPS that, by the way, had not been reported stolen. It wasn't until 12 hours later, when the car was back in Decatur, they checked the navigation system on the GPS and they noticed that one of the addresses that came up went to one of the houses that was burglarized, and then they contacted the individual who lived in that house and said, oh, yeah, my Garmin was stolen. That's too attenuated to say that it's inevitable discovery. If that Garmin had been reported stolen and the police had found it while they were sitting in the back of this gentleman's house and they knew it was stolen, that's inevitable discovery that then they would get a search warrant to get inside the house. Well, why isn't there enough evidence at the time they're all there at that residence and the one officer sees this man running from the Dodge Charger go into the house and leave the house? Why isn't that enough to get a search warrant? You'd have to ask the Springfield Police Department. Well, whatever they think isn't relevant. They're not the arbiter of whether there's probable cause or not. The judge is. See, the problem is that issue hasn't been fully litigated at the trial court and it's been forfeited by the state if that's the theory they want to pursue. The trial court certainly didn't make that finding. Well, because the trial court found that the material discovered in the search shouldn't be suppressed. So there's no reason for the state to have to make that argument, right? I guess I don't understand the question. The trial court ruled in favor of the state on the issue of whether the evidence from the search should be suppressed. Correct. So then the state doesn't need to make the inevitable discovery argument. Well, the inevitable discovery... Going from the charger into the house and out has nothing to do with the inevitable discovery argument that's been made by the state on appeal. They're saying that because the Garmin GPS was found in the charger and it was eventually linked to the burglaries, that they inevitably wouldn't be able to get a search warrant for the house. That's the argument as I understand it. And like I said, the theory that him going in the house and leaving gave you probable cause to get inside the house was not pursued by the state at any point. They don't have to present one single theory. Basically, the record has not been developed good enough to say whether that would have happened or not. If there are any further questions, I'm sure we'll have more on the phone. Okay, thank you, counsel. Ms. Miller? Good morning. May I please be called? My name is Perry Miller. I'm here on behalf of the State's Attorney Appellate Prosecutor's Office. Ms. Miller, can you keep your voice up a little bit? That microphone will help you out. I'm here on behalf of the State's Attorney Appellate Prosecutor's Office. It's the state's position that the trial court probably denied the defendant's motion to suppress the evidence in this case. The state first wants to address the question that Justice Turner raised regarding probable cause and the testimony at trial. The state does not recall that the police officer testified that there was not probable cause at that point. What I have is that with Detective James Adkins, that was a member of the Decatur Police Department. He was requested to complete a search warrant of the house. And he identified the search warrant and also the complaint for search warrant. In there, when he drafted the complaint, he testified that he had been advised of the Springfield Police Department entry into the residence and observation of the items in plain view. He believed the information about the items in plain view was necessary to establish probable cause. That's what I have in relation to that. The items that the officers saw, they were outside of the residence. The door was ajar. So on the plain view, when they saw those items, they saw them from outside. And on the plain view document, he felt that that was necessary for probable cause. That was his testimony. The state maintains that the officers' entry into the house was based on the community caretaking function. That was one of the issues that was raised at the motion to suppress. And Justice Polk, you asked about the second entry into the house, which was not raised at the motion to suppress him. The court addressed the exigent circumstances and community caretaking function. And in that regard, the court based this decision upon the exigent circumstances, viewing it from the objective standpoints to determine whether circumstances existed, whether the police were acting in a community caretaking function. And the court, in that regard, looked at certain facts and knowledge that the officers had that was totally unrelated to the investigation of the crime. The court noted that it was a very cold night in February. This testimony was given by Sergeant Wiseman, who's the sergeant of the Springfield Police Department. He made the decision to go in, and he stated that the reason why he made that decision was to do a protective sweep to see if anyone could have been injured at all. And the facts that he relied on was that he was aware earlier that there was a burglary that had appeared. But he testified that that was not the reason why he arrived there. And the information that he had been given was it was a very cold night. A person had been seen running from the house. Later, that person entered a car, took off. The door was ajar. He said that wasn't normal behavior. They also heard voices coming from inside the house. The officers did acknowledge that they were aware that there was a police scanner, but they said at that time they could not identify whether this was live voices or not. Detective Sergeant Wiseman also was very familiar with the suspect, the defendant, Floyd Brown, in this case. He pointed to the fact that he knew of his violent history. He had been involved in domestic disputes. He also was involved in a homicide. And just six months prior to this incident, Sergeant Wiseman had involvement with the defendant regarding a kidnapping case. So based on all of those facts, he felt that it was necessary under the community to do a protective sweep to make sure that no one inside the residence was. Counsel, how could the taking of the pictures of the items in the kitchen possibly be part of a community caretaking function? Your Honor, once they were, once they were, the state's position is that once they were inside of the residence, them taking the pictures. I'm not clear if it's alleged that the Springfield Police officers took the pictures. There was a Decatur police officer entering after the Springfield Police officer or officers had left. And it appears to me that the Decatur officer went in not on a community caretaking function, but to take pictures of probable or possible contraband. Does that sound accurate? Yes, but that wasn't addressed in the motion to suspend. But wasn't, weren't the pictures used in obtaining the search warrant? Not that, there was other evidence. But were they part of the evidence? The pictures? Yes. I'm not for sure on that. What I know is that in drafting the complaint, Atkins was given information regarding, in plain view, when the officers entered, they saw a jury stroll across the countertop in the kitchen. And they had prior information that in the burglaries that had occurred during this time period. I thought they used the photographs to match up the alleged contraband to the items that had been taken from former burglary victims. And then with that evidence put together, it was submitted to the court for the warrant. Is that incorrect? I don't, I don't believe it occurred like that. I cannot say for sure, but I don't recall that account that they actually had the jury set up. Their sergeant, Risenman, once they went in. Before you move on any further, would you concede for the state that taking of the photographs could not have been part of the community caretaking function? For the Decatur Police Department, that would have, as far as it wasn't part of the community caretaking function by the Springfield Police Department? Whether it's Springfield or Decatur, we have police officers in somebody's residence without a search warrant taking pictures of possible contraband. And my question is, regardless of where the police officers came from, from whatever jurisdiction, would the state concede that couldn't possibly be considered to be part of the community caretaking function, nor a sweep for safety concerns? Yes, based on that theory, Your Honor, because the community caretaking program function is to, is first of all, it's not going to investigate purposes. Second, it's just for a scope that's reasonable in size to go in and check for the safety or injury of that. But it's not the state's position that based upon the evidence that they saw, once they got, once they were legally inside, then the evidence was in plain view. So it wouldn't have, they're not prohibited from, that's not considered an illegal search or a violation of the defendant's constitutional rights. In terms of the issue that wasn't addressed at the trial court in this order, but that was raised in the state's motion to suppress, was the inevitable discovery doctrine. And under that doctrine, the evidence obtained by the police, if it was said to be in violation of the defendant's rights, wouldn't have been admissible if the prosecution could show that by the abundance of the evidence, it wouldn't have been discovered without reference to the officer's alibi. And the state's position is that, that doctrine that the state had met, that first, the condition of the evidence was actually found, so all the evidence was in the same place where the officers went in. The police officer entered the residence to conduct a petitive sweep, and in doing so, they saw items associated with the Decatur burglaries in plain view. No one was found in the residence, the police secured the residence until the Decatur officers obtained a search warrant for the residence. So by doing so, they prevented anyone from entering the residence and tampering with the evidence. Secondly, there was already an independent investigation of the burglary of three items in progress by the Decatur Police Department that would have uncovered the burglary items apart from many of the screened-out police conduct. They already was investigating the burglaries from September 17th to February 9th. On the day in question, the night in question, the officers, the Decatur officers had seen Mike Georgian. There was an area that had calls responding to burglaries that had occurred and two attempted burglaries, and Mike Georgian was seen leading to Springfield and was located there by the Springfield officers. He was parked out in a driveway, the same Charger, and the description of the suspect seemed to be the same that had led to Decatur. Lastly, the Decatur police investigation, the items were seen in plain view by the Springfield police officers, and as part of the Decatur investigation, they contacted the Springfield Police Department. When the officers proceeded to the residence, they conducted a protective sweep. The Decatur investigation was already ongoing, and based on these facts, we intend to find an eligible discovery document and the evidence that could be of interest. Thank you, Ms. Perry, Ms. Miller. I'm having a bad day today with names. Mr. McCarthy, any thought? Initially, I'd like to apologize to Justice Polk. During my argument, you had asked about the second entry and whether it was proper before the court. I told you I wasn't arguing that. I'm not feeling well, and I recall now, I argued that in my brief, and that's probably what you were talking about. And the fact of the matter is, this did come in on the New Counsel's supplementary discovery depositions, and I do believe it's proper before the court. It came in, but it was an evidence deposition taken for trial purposes, not for purposes of suppression, isn't that true? I do know that the counsel asked the trial court to consider it, and I don't recall the exact, for the suppression issue, I don't recall the exact words the trial court used, but the inference I got was, there's nothing in there that's going to change my mind. And so, you have the record, and you'll be able to tell exactly what was said. That was the inference I got from it. As to Justice Turner's concern, the taking of the photographs had nothing to do with the community care taking function. That was, I believe, improper at this point. There was nothing open there, obviously, illegal by any means that could be found. Had there been a bag of pot and some scales there, I think it'd been okay. His jewelry and coins and the like, I don't believe it is enough. The last point I want to make, a lot has been made about the fact that my client has a history with Springfield Police Department, he's known for the occasion of violence, and he was seen running from the home, and that justified what the Springfield Police did. I don't think, simply because he runs from his house, because he's a violent felon, that invites the police to walk in every time such a thing happens. They still have to follow the proper constitutional procedures. There was a constitutional procedure here that was knocked on the door, and it's Justice Connett that could possibly create the problems, but I believe it's less problems that were created by Pepper Springs on his dog. People love their pets, and you have a dog yelping in pain, and you think you're having a home invasion, I believe the Springfield Police Department created a situation that did not need to be created. Thank you, Your Honor. Mr. McCarthy, you were always a good advocate for your client, and you have also just indicated that you're not feeling well, and I waited to make this comment after so that it wouldn't interfere with your argument. I am not a coat-and-tie-and-suit person by preference, but if I have to wear a shirt and a tie for court, then I want your shirt buttoned and your tie all the way up. Yes, Your Honor. Because I'm uncomfortable, and I'd like to unbutton mine. I only realized it wasn't buttoned. I apologize, Your Honor. That's fine. Thank you. We'll be in recess and take this matter under the President.